MAX N. TOBIAS, JR, Judge.
J^Jerry David Allison (“Jerry”) seeks a reversal of a trial court’s judgment that granted possession of all of the property of Julia Lambert Amaro, the decedent, to her husband at the time of her passing, Marcelino Amaro. For the reasons that follow and based upon the record on appeal before us, we vacate the trial court’s judgment and deny Jerry’s motion to supplement the record on appeal with a copy of the purported decedent’s last will and testament.
Julia Lambert Amaro departed this life on 1 May 2012. Her husband, Marcelino Amaro, commenced these proceedings with a petition for possession filed on 4 September 2012 in which he alleged that his late wife died intestate leaving immovable property and that he accepted her succession as her sole heir. To his petition, Mr. Amaro attached a notarized affidavit of death and heirship signed by him and “Margie Smith,” in which they assert that (a) they were well acquainted with the decedent, (b) the decedent was domiciled in Orleans Parish, (c) the decedent died intestate on 1 May 2012, (d) the decedent was married at the time of her death to Mr. Amaro, and (e) Mr. Amaro is the decedent’s sole heir. No ^allegation is made, as is customary in such an affidavit, as to (a) the number of times the decedent was married, (b) to whom she had been previously married and how any earlier marriage terminated, (c) the number and names of the children she had and/or adopted and if any of her children predeceased her, (d) whether she was adopted by anyone, and (e) if relevant, whether her parents predeceased her.[1] The sworn descriptive list attached to Mr. Amaro’s petition and signed by him lists a piece of immovable property located in Orleans Parish valued at $100,000 and debts of the decedent of $12,000. The ex parte judgment of possession rendered on 4 September 2012 decrees that Mr. Amaro is the sole heir and surviving spouse of the decedent and places him in possession of the Orleans Parish immovable property. (No notice of judgment was required to be issued under the literal language of La. C.C.P. art. 1913 A[2] because at the time the judgment was signed, nothing was contested — the matter being handled ex parte.)
On 9 November 2012, Jerry filed a “Petition to Intervene” in the succession proceedings “pursuant to La. C.C.P. art. 1091,” in which he alleges inter alia that (a) he was the son of the decedent; (b) Mr. Amaro was the decedent’s third husband; (c) Mr. Amaro was acquainted with him and aware that he was the decedent’s son and heir; (d) the immovable property forming the subject of the judgment of possession was the decedent’s separate, and not community, property; |s(e) he was not informed of the opening of the succession and of the nondisclosure of his existence; (f) he discovered the judgment of possession when preparing to open his mother’s succession; and (g) he has the right to appeal the judgment under La. *915 C.C.P. art. 2086.[3] He attached to his petition his own sworn affidavit of death and heirship signed by only him[4] in which he asserts (a) that the decedent died testate; (b) that the decedent was domiciled in Orleans Parish at the time of her death; (c) to whom the decedent had been married; [5] (d) that he was the decedent’s only son and that he survived the decedent; (e) that the decedent adopted no one else and was not adopted by anyone; (f) that the decedent’s parents predeceased her; (g) that he was aware of the existence of a testament but had not yet located it; (h) that Mr. Amaro was aware that he was the decedent’s son and had his address and telephone number; and (i) that he was personally acquainted with Mr. Amaro since Mr. Amaro’s marriage to the decedent. Jerry also attached a copy of his own birth certificate that shows his mother to be “Julia Crabtree.” The birth certificate shows Jerry’s father to be Albert William Allison, but discloses no relationship between Julia Crabtree and Albert William Allison, although Jerry’s affidavit | ^asserts that the decedent was married to Albert William Allison. An order was signed on 9 November 2012 allowing Jerry to intervene.
On 9 November 2012, Jerry also filed a “Motion for Suspensive Appeal Out of Time or, in the Alternative, Motion for Expedited Appeal.” The trial court denied the out-of-time suspensive appeal on 14 November 2012, but did grant Jerry a devolutive appeal.[6]
On 18 November 2012, before the order granting the appeal was signed, Jerry filed an ex parte motion to supplement the record with another affidavit of death and heirship signed by Hugh David Crabtree, who asserts, in addition to many of the same things asserted by Jerry in his affidavit, that he was the decedent’s brother and the decedent was married to Albert William Allison of which “union” Jerry was born. The trial court granted the ex parte motion.
Jerry assigns but one error of the trial court to us: the trial court erred in entering the judgment of possession based upon the “fraudulent affidavit of Marcelino Amaro and Margie Smith, which provided the false assertions that decedent died intestate” and that Mr. Amaro was the decedent’s sole surviving heir.
Before addressing Jerry’s assignment of error, we note one additional matter. On 14 February 2013, after the record on appeal was lodged in this court, Jerry filed in this court an ex parte motion to supplement the record with a copy of the decedent’s purported last will and testament dated 18 August 2007. This
*916 | ..¡purported testament has not been admitted to probate. As a court of record, we cannot consider any document or pleading not forming part of the record on appeal. Moreover, the document was not filed in the trial court prior to the trial court being divested of jurisdiction. La. C.C.P. art. 2088. Therefore, we do not grant Jerry’s 14 February 2013 motion to supplement. Nevertheless, whether we were to grant the motion or not is of no moment in this case as becomes apparent from our discussion, infra.
In the analogous case of Succession of Lissa, 194 La. 328, 193 So. 663 (La.1940), the decedent’s daughter, Mrs. Mathe, opened the decedent’s succession, praying that a notary public be appointed to search for the decedent’s will. After her obtaining an order of appointment of the notary and without notice to her or any of the decedent’s other children, Mrs. Mathe’s father, Mr. Spiro, filed a petition to probate a testament of the decedent written twenty-seven years earlier, seeking to be appointed executor of the decedent’s estate and alleging that he had been appointed executor. On the following day, Mr. Spiro filed a rule against Mrs. Mathe to rescind the order appointing the notary that Mrs. Mathe had been granted. The hearing on his rule was continued indefinitely. Mr. Spiro was thereafter confirmed as testamentary executor and obtained an inventory of the decedent’s property. About 1.5 years later, Mr. Spiro obtained a judgment of possession, placing him and his three children in possession of the decedent’s property based upon an asserted compromise, alleging that Mrs. Mathe had been disinherited by the decedent in the probated testament. No notice was provided to Mrs. Mathe of any of the proceedings. Mrs. Mathe appealed, asserting that the judgment of | (¡possession was invalid because even though a lawful heir, no evidence had been introduced establishing that she had been disinherited. Mr. Spiro moved to dismiss Mrs. Mathe’s appeal, asserting, inter alia, that she had no right to appeal absent her filing of a petition to set aside the probate of the decedent’s will, asking for a new trial, or asking for an amendment of the judgment of possession.
The Supreme Court held that Mrs. Mathe had an appealable interest in the judgment of possession, reasoning the then applicable Code of Practice article (now embodied in La. C.C.P. art. 2086) granted a third party the right to make a “prima facie showing that they are aggrieved by the judgment.” Id., 194 La. at 334-35,193 So. at 665. Citing Succession of Barber, 52 La. Ann. 960, 27 So. 363 (1900) and Succession of Dickson, 148 La. 501, 87 So. 251 (1921), the Court held that “a person claiming to be an heir may appeal from an ex parte judgment placing other persons in possession.” Lissa, 194 La. at 335, 193 So. at 665.[7]
Although it might be said that the trial court did not err in rendering the ex parte judgment of possession based upon the evidence that it had before it on 4 September 2012, subsequent events and evidence in the record on appeal establish that the judgment of possession should be vacated. La. C.C.P. art. 2164. If Jerry is in fact the decedent’s sole child as appearing to be established by Jerry’s birth certificate and the affidavits of death and heirship that he submitted with his 9 and 13 November 2012 pleadings, he would be the decedent’s sole heir by virtue of Mr. Ama-ro’s allegation that the decedent died intes *917 tate. Jerry has made a prima facie case per the record on appeal that he is the child of Julia Lambert Amaro. An appropriate proceeding in the trial court where testimony and evidence can be 17submitted is warranted. At such hearing, the determination can also be made of whether the immovable property reflected in the judgment of possession is the separate property of the decedent or community property.
For the foregoing reasons, we vacate the judgment of possession rendered on 4 September 2012 in these proceedings and remand this case to the trial court for further proceedings. The motion of Jerry David Allison to supplement the record on appeal is denied.
JUDGMENT VACATED; MOTION TO SUPPLEMENT DENIED.

. The absence of such allegations may create unmerchantable title of the immovable.

. Article 1913 A of the Code of Civil Procedure states: "Except as otherwise provided by law, notice of the signing of a final judgment, including a partial final judgment under Article 1915, is required in all contested cases, and shall be mailed by the clerk of court to the counsel of record for each party, and to each party not represented by counsel." [Emphasis supplied.]

.Code of Civil Procedure article 2086 states: "A person who could have intervened in the trial court may appeal, whether or not any other appeal has been taken.”
The official revision comments to article 2086 note that La. C.C.P. art. 1091 “requires that there be connexity between the intervention and the main case, and furnishes the criterion for determining the right of appeal of third persons” and that "[wjhen a third person appeals, he takes the record as he finds it, and must show either that the judgment appealed from is erroneous or that it was the result of fraud and collusion between the original parties" (citing Haas v. Haas, 181 La. 265, 159 So. 384 (1935) and Balis v. Mitchell, 48 So.2d 691 (La.App. 1st Cir.1950)).

. Articles 2821 and 2822 and of the Code of Civil Procedure require two individuals, not one, to sign an affidavit of death and heirship.

. Jerry does not state what happened to the decedent’s previous two husbands prior to her marriage to Mr. Amaro.

. Nothing in the record before us indicates that a notice of the pendency of this appeal has been filed in the Orleans Parish conveyance records.

. The Court implicitly recognized that the issue of nullity could also be addressed by a petition of nullity of judgment. Id. The law of nullity of judgment under our current law is set forth in La. C.C.P. art. 2001 et seq.